IN RE APPROPRIATION OF AN EASEMENT FOR HIGHWAY PURPOSES OVER LANDS OF WADDUPS: BOYLE, TREAS., ET AL., APPELLANTS, *v.* THE MIDDLEBURGH REALTY CO., APPELLEE.

(No. 19674—Decided May 29, 1944.)

*Mr. Frank T. Cullitan,* prosecuting attorney, *Mr. Saul S. Danaceau* and *Mr. R. A. Baskin,* for appellants. *Messrs. Locher, Green & Woods,* for appellee.

MORGAN, P. J. The state highway director brought an action in the Common Pleas Court of Cuyahoga county, to appropriate an easement for a highway over a large number of parcels of land. Three of these parcels are located in the village of Brook Park and are owned by The Middleburgh Realty Company. The state highway director, before trial, reached an agreement with the company to pay $35,000 by way of compensation for the land taken and for damages to the residue. Later this amount was paid into court and this appeal deals solely with the distribution of the fund as ordered by the trial court.

At the time of the appropriation, the parcels were subject to liens for delinquent general taxes and unpaid special assessments. The trial court in its decree apportioned the liens for taxes and special assessments between the area appropriated for a highway and the westerly residue of the parcels not appropriated.

At the time of the appropriation, the delinquent general taxes with penalties were as follows: Parcel No. 1, $5,774.64; parcel No. 2, $256.47; parcel No. 3, $87.05.

By the decree of the trial court the general taxes and penalties on parcel No. 3 were paid in full. The court ordered delinquent taxes and penalties on parcel No. 1, amounting to $1,938.89 paid to the county treasurer and apportioned the unpaid general taxes and penalties in the amount of $3,835.77 to the residue. An amount of $76.70 of the taxes and penalties due on parcel No. 2 was ordered paid to the county treasurer and taxes and penalties in the amount of $179.77 were apportioned to the residue. Accordingly, $4,015.54 of the delinquent general taxes in all remained unpaid and were apportioned to the westerly residue of the land remaining in the possession of The Middleburgh Realty Company, although there was enough money in the fund to pay such delinquent taxes in full.

The auditor and treasurer of Cuyahoga county maintain that the accrued and unpaid general taxes on the three parcels were a lien on every foot of the land; and that inasmuch as the award was sufficient to pay these taxes in full they should be so paid before any part of the award is paid to The Middleburgh Realty Company.

Section 5671, General Code, provides that "the lien of the state for taxes levied for all purposes, in each year, shall attach to all real property subject to such taxes * * *."

As early as 1835, the Supreme Court in *Monroe* v. *Doe*, 7 Ohio, 262, held (referring to tax liens):

"The state has a lien upon all land not exempt from taxation, which is calculated to be perpetual, and which can not be affected by any sale or transfer * * *. It can be removed in no other way than by the payment of all taxes, penalties, and interest due upon the land."

In *In re Houghton and Olmstead Avenues*, 266 N. Y., 26, 193 N. E., 539, the Court of Appeals of New York held:

"The lien of a mortgage or of a tax is upon the entire property. When a portion of it is taken in condemnation proceedings and an award made the lien attaches to the award and the lienor is entitled to satisfy the entire amount of his lien therefrom."

This is no doubt true in the case of a lien of a mortgage. In the case of *In re East 29th Street in the City of New York,* 273 N. Y., 62, 6 N. E. (2d), 98, the Court of Appeals of New York said:

"1. Where a part of mortgaged property is taken in condemnation proceedings the entire award is subject to the lien of the mortgage.

"2. Where the amount due on the first mortgage * * * exceeded the award, the mortgagee is entitled to the whole thereof with interest, less the benefit assessment * * *."

The appellee relies on Section 2573, General Code, which provides for the transfer by the county auditor of "any land * * * or part thereof * * * charged with taxes on the tax list from the name in which it stands into the name of the owner, when rendered necessary by a conveyance, partition, devise, descent or otherwise." This section evidently relates primarily, if not exclusively, to general taxes assessed after a separation of the ownership of a tract of land by the conveyance of a part thereof.

Our attention was called in argument to the fact that the auditor of Cuyahoga county, in the case of a conveyance of a part of a tract of land, frequently has apportioned unpaid delinquent taxes between the property conveyed and the residue. Whether the auditor has authority to make such apportionment, we do not decide as the question is not before us.

We do hold that where the state acquires by condemnation or agreement a part of a tract on which the taxes have become delinquent, the amount paid by way of compensation for the land so acquired is first to be applied to the payment of all of the delinquent

general taxes and there can be no apportionment of any part of such delinquent taxes to the unacquired residue.

The three parcels belonging to The Middleburgh Realty Company were subject, at the time of the appropriation by the state highway director, to the following special assessments:

1. Parcel No. 1, for the paving of Brook Park road, principal assessment and penalty, $4,738.08 (by agreement of parties, the decree of the trial court ordered this amount to be paid in full); 2. Unpaid special assessments levied by the council of Brook Park village against parcel No. 1 for the construction of a water main in Brook Park road, which assessments were respread in 1938, and amounted to $2,510.14 of which $375.64 have accrued; 3. Special assessments levied by the council of Brook Park village against parcels 1, 2 and 3, for the construction of a main outlet sewer. The unpaid assessments, with penalties, amounted to approximately $21,021.58 of which more than $2,678.12 had accrued.

At the time of the entering of the decree in the Common Pleas Court, the question of the validity of these special assessments for a storm sewer was the subject of litigation. Later these assessments were held valid by this court and a motion to certify to the Supreme Court has been overruled.

The trial court ordered paid to the treasurer of Brook Park village $1,879.87 on the special assessments for the construction of the water line in Brook Park road and further ordered that "the sum of $14,035.95 of said award shall be retained in the hands of this court, until further order, to provide for that portion of the special assessments levied by the village of Brook Park on parcels Nos. 1, 2 and 3, for a main outlet storm sewer, now in litigation, hereby allocated to that part of parcels Nos. 1, 2 and 3 included in said highway easement * * *."

After the payment of the amounts ordered by the Common Pleas Court to be paid to the county and village treasurers, there remained $11,943.48 which the court ordered to be paid to The Middleburgh Realty Company.

It is obvious that no distinction can be drawn between the portion of the special assessments which have accrued and are unpaid and delinquent general taxes. The same reasons which cause us to deny apportionment in the case of liens of general taxes, apply with equal force to accrued special assessments. The question then remains whether a court in distributing the fund received in a condemnation proceeding for a portion of a tract of land bearing special assessments may apportion the assessments payable in the future between the land appropriated and the residue.

Section 2595, General Code (which became effective in August 1941), provides as follows:

"Whenever a portion or portions of a tract or parcel of real estate is conveyed to another owner or other owners, and said tract or parcel bears unpaid special assessments, the authority certifying such assessments shall, on request of the county auditor, furnish the auditor with the proportionate amounts of the assessment or assessments to be allocated to the portion or portions of the original tract or parcel so conveyed to another owner or other owners, and the lien of the assessment or assessments as levied against the original tract or parcel, shall extend to the portion or portions so conveyed, only to the extent of the amount or amounts so allocated to the respective portion or portions by the certifying authority. However, nothing in the above shall be construed to change the total amount of the assessment or assessments as originally levied, or the total amount of the balance or balances due."

The above section provides a method and, so far as

we are aware, the only statutory method for apportioning special assessments when the tract which bears special assessments is divided by conveying a portion to another owner. The Middleburgh Realty Company did not see fit in this case to proceed under Section 2595, General Code.

It is our opinion that the provisions of Section 2595, General Code, which empower "the authority certifying such assessments" (in this case the village council) to make an apportionment of special assessments at the request of the county auditor "whenever a portion or portions of a tract or parcel of real estate [bearing unpaid special assessments] is conveyed to another owner or other owners" can not be construed so broadly as to authorize the court to make an apportionment of the unpaid special assessment liens in this case.

Likewise, it is our opinion that the court can not base such an authority on its general equity powers. The installments of the special assessments to become due in the future are as truly liens on the benefited property as are delinquent taxes or assessments. Therefore, when a part of the property bearing special assessments is acquired by a public authority, it becomes the duty of the court in distributing money paid into court by way of compensation to pay not only the special-assessment liens already accrued but also to pay, as provided in Section 5677, General Code, or to set aside a sufficient sum to pay, the assessment liens to become due in the future before making any payments from the fund to the landowner. See *Scully* v. *City of Cincinnati*, 9 C. C. (N. S.), 63, 19 C. D., 713.

The decree will be drawn in accordance with this opinion.

*Decree accordingly.*

SKEEL and LEIGHLEY, JJ., concur.